THE ATTORNEY GENERAL
OF TEXAS
AUSTIN 11, TEXAS


GROVER SELLERS
XXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. Joe Reeder, Jr.
County Attorney
Knox County
Benjamin, Texas

Opinion No. O-6953

Dear Sir:

Re: Should a corrected census roll
be used by the Department of
Education in computing State aid due
an independent school district?

     We have for attention and reply your letter of November 23, 1945, which reads as follows:

"In April, 1945, Munday Independent School District rendered a roll of the children of scholastic age to the Knox County Superintendent's office. The census taker erroneously dated two birth dates a year later than she should have. As a result the County Superintendent struck the two children's names concerned off the Munday roll of enumerated scholastics. As a result, the Munday school fell two short of the enumerated scholastics that the school authorities believed they should have on the roll. When the first per capita payment was made to Munday Independent School District it was two short of the expected amount.

"On investigation the facts were discovered and the names of the two children that had been eliminated by the Knox County Superintendent were submitted to the State Enumeration Office along with birth certificates of the two children.

"Based upon the above facts, the following questions are submitted:

"1. Will the corrected roll at the State Superintendent's Office be recognized for purpose of calculating state aid to the Munday Independent School District?

"2. What is the meaning of the phrase 'No change in census' as set forth in the present rural aid bill Art. I, Sec. 6?

"3. Does the term 'census' in Art. I, Sec. 6 mean Federal census or enumerated scholastics?"

     In answering your first question, we assume that "the names of the two children that had been eliminated by the Knox County Superintendent were submitted to the State Enumeration Office along with the birth certificates of the two children," after November 1, 1945, the dead line for

census changes as provided in Article I, Section 6 of Senate Bill 167, 49th Legislature, which reads as follows:

"Sec. 6. No adjustment of transfers or census changes made after November 1st of the current school year shall be recognized in making grants of any type of aid under the provisions of this Act." (Underscoring ours)

This is a section which has not appeared in former Acts providing for rural aid and, consequently, wehave found no court decisions which have passed upon the validity or constitutionality of the provision. The wording of the section we think is clear and the intention of the Legislature must have been to prevent any changes in census records in so far as such would affect the amount of rural aid to which any school district would be entitled after November 1st of the current school year. The first question we must decide is whether or not such a provision would be contrary to Article VII, Section 5 of our Constitution which provides, in part, as follows:

"And the available school fund herein provided shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law." (Underscoring ours)

In the case of Mumme, et al, vs. Marrs, 40 S.W. (2) 31, our Supreme County, Judge Cureton writing, rendered an opinion on the constitutionality of the Rural Aid Appropriation Act, effective for the biennium beginning September 1, 1929. We think it well to quote pertinent paragraphs from this opinion:

"The limitation in Section 5, Article 7, declaring that the available school fund 'must be appropriated to counties according to scholastic population, has always applied and now applies only to the available school fund,' which is clearly defined in that section. Constitutional provisions, like statutes, are properly to be interpreted in the light of the conditions existing at the time of their adoption, the general spirit of the times, and the prevailing sentiments of the people."

"Under the constitution, our public schools are essentially state schools, and authority to control their operation, except as otherwise provided, is included among the powers conferred upon the Legislature."

"Section 1 of Article 7 of the Constitution reads: 'A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shallbe the duty of the Legislature of the State to establish and make suitable provisions for the support and maintenance of an efficient system of public free schools."

"The purpose ofthis section as written was not only to recognize the inherent powers in the Legislature to establish an educational system for the State, but also to make it the mandatory duty of the Legislature to make suitable provision for the support and maintenance of an efficient system of publkc free schools,' necessarily conferred the power to make the mandate effective. . . . Since the Legislature has the mandatory duty to

make suitable provision for the support and maintenance of an efficient system of public free schools, and has the power to pass any law relative thereto, not prohibited by the Constitution, it necessarily follows that it has a choice in the selection of methods by which the object of the organic law may be effectuated. The Legislature alone is to judge what means are necessary and appropriate for a purpose which the Constitution makes legitimate. The legislative determination of the methods, restrictions, and regulation is final, except when so arbitrary as to be violative of the constitutional rights of a citizen."

"The word 'suitable' used in connection with the word 'provision' in this section of the Constitution is an elastic term, depending upon the necessities of changing times or conditions, and clearly leaves to the Legislature the right to determine what is suitable and its determination will not be reviewed by the courts if the act has a real relation to the subject and object of the Constitution." (Underscoring ours)

"Equal protection of laws is secured if the statutes do not subject the individual to arbitrary exercise of the powers of government. It is well settled that legislation is not open to objection if all who are brought under its influence are treated alike in the same circumstances." (Underscoring ours)

Section 6, Article I, S., B. 167, had as its purpose that of assisting the department in the detail administration of the entire act. As stated above, it is a new provision, placed into the bill after experiencing the difficulty of administering similar acts minus such a provision. We do not think it arbitrary or unreasonable. It applies alike to all schools and districts which seek aid under the provisions of the Rural Aid Bill.

Articles 2816, 2817 and 2817a, Revised Civil Statutes, provide for the methods to be followed in the taking and reporting of scholastic census. Article 2817a requires the census taken to submit his report to the County Superintendent on or before May 1st of each year. Article 2819 requires the County Superintendent to make consolidated rolls and "scrutinize carefully the work of the census trustees, and shall have power to summon witnesses, take affidavits and correct any errors he may find in any census trustee's rolls . . ." and this same article also requires the County Superintendent to submit his consolidated rolls to the State Superintendent on or before July 1st of each year. There is, therefore, a period of six months, i.e., May 1st to November 1st, during which time errors in the work of the census takers may be corrected. We find no legal objection to Section 6 of Article I, S.B. 167, as passed by the 49th Legislature, and must therefore answer your first question negatively.

Your second question is, "What is the meaning of the phrase 'no change in census' as set forth in the present rural aid bill, Art. I, Sec. 6?" The exact wording of the section is as follows: "No adjustment of transfers or census changes made after November 1st of the current school year shall be recognized in making grants of any type of aid

under the provisions of this Act." We believe it was the intention of the Legislature in placing this provision in the Bill to effect a "dead line" after which no changes, or corrections which would alter the amount of Rural Aid to which a given district may be entitled to receive, could be recognized.

In answer to your third question, you are advised that it is the considered opinion of this department that the word "census" as used in Section 6 of Article I, S. B. 167, refers to Scholastic Census and not the Federal Census.

Trusting the above satisfactorily answers your inquiry, we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ E. M. DeGeurin

E. M. DeGeurin
Assistant

EMDeG:bt:egw

APPROVED DEC 7, 1945
/s/ GROVER SELLERS
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion  Committee
By BWB
Chairman